**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 12-2241**

---

PROJECTS MANAGEMENT COMPANY,

        Plaintiff – Appellant,

    v.

DYNCORP INTERNATIONAL LLC,

        Defendant – Appellee.

---

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  T. S. Ellis, III, Senior District Judge.  (1:11-cv-01345-TSE-IDD)

---

Argued: September 19, 2013      Decided: November 5, 2013

---

Before AGEE, DAVIS, and DIAZ, Circuit Judges.

---

Affirmed by published opinion.  Judge Agee wrote the opinion, in which Judge Davis and Judge Diaz joined.

---

**ARGUED:** Thomas Bausman Kenworthy, MORGAN LEWIS & BOCKIUS, LLP, Philadelphia, Pennsylvania, for Appellant.  Joseph William Koegel, Jr., STEPTOE & JOHNSON, LLP, Washington, D.C., for Appellee. **ON BRIEF:** John F. O'Connor, STEPTOE & JOHNSON LLP, Washington, D.C., for Appellee.

AGEE, Circuit Judge:

Projects Management Company ("PMC") appeals from the district court's dismissal of its suit against DynCorp International LLC ("DynCorp"). The district court dismissed PMC's suit on two alternate grounds: first, as a sanction for PMC's repeated discovery abuses; and second, based on its conclusion that PMC was seeking damages contrary to the measure of damages provided by well-established law. For the reasons set forth below, we affirm the judgment of the district court.

I.

DynCorp contracted with the United States Department of State to assist in the development of a civilian police force in Iraq. In connection with this contract, DynCorp entered into a subcontract with PMC (the "Subcontract") for operations and maintenance support in Iraq between August 1, 2008 and February 17, 2009, with an option to extend performance to February 28, 2010. PMC executed the Subcontract with DynCorp through its Managing Director, Hussein Fawaz, who was also represented to DynCorp as having an ownership interest in PMC. The Subcontract

2

identified PMC Project Manager Greg Byers as PMC's point of contact with DynCorp.[1]

The Subcontract provided that PMC would periodically invoice DynCorp and that DynCorp would, within 45 days of the date of each invoice, tender periodic payments to PMC by making a wire transfer directly to an account held by PMC at Kuwait Gulf Bank (the "Kuwait Account"). The Subcontract also provided that "[n]o oral statement of any person shall modify or otherwise affect the terms, conditions, or specifications stated in this Subcontract." (J.A. 39.) PMC began its performance under the Subcontract and listed payment instructions on the face of each invoice sent to DynCorp. The invoices were paid by DynCorp according to those payment instructions, which were consistent with the payment information in the Subcontract. In December 2008, PMC's invoices began directing DynCorp to make payments to a new bank account at the National Bank of Kuwait (Lebanon) located in Beirut, Lebanon and held in the name of Fawaz (the "Lebanon Account"). DynCorp personnel contacted PMC through Fawaz and Byers to confirm that future payments should be made to the Lebanon Account rather than the Kuwait Account. Fawaz

---

[1] The Subcontract listed no other PMC employees, and DynCorp was made aware of no other principals or managers of PMC.

responded to DynCorp with a letter written on PMC letterhead directing DynCorp to make its payments to the Lebanon Account. Byers also responded to DynCorp by email, confirming the change in payment instructions and stating that all PMC invoices would list the correct banking information on their face. Another PMC employee, acting at the direction of Fawaz and Byers, followed up with DynCorp to confirm that future payments should be made to the Lebanon Account. DynCorp then began making payments to the Lebanon Account, as directed in the PMC invoices. PMC did not inform DynCorp of any problems with its payments.

Near the end of the initial Subcontract term, DynCorp and PMC, through Greg Byers, agreed to exercise the option to extend the term of the Subcontract, including a provision that "[a]ll other terms and conditions remain the same." (J.A. 75.) After several months of continuing performance under the Subcontract, DynCorp issued a Cure Notice to PMC, notifying PMC of performance issues under the Subcontract and providing PMC with an opportunity to remedy its performance. Shortly thereafter, DynCorp terminated the Subcontract and requested a termination settlement proposal from PMC. In response, PMC requested a payment of $978,494.22, claiming $789,099.50 in unpaid invoices and $189,394.72 in other costs and expenses. The parties did not reach a settlement agreement.

4

After the termination of the Subcontract, DynCorp was apprised that Fawaz was not, in fact, a part owner of PMC. It was further revealed that PMC's true owners were members of the Al-Muhanna family of Kuwait, most notably Rabea Al-Muhanna, who PMC contends had sole authority over the financial affairs of PMC.

On January 25, 2012, PMC sued DynCorp in the United States District Court for the Eastern District of Virginia under the court's diversity jurisdiction, alleging breach of contract, aiding and abetting a breach of fiduciary duty, and business conspiracy. Specifically, PMC alleged that DynCorp breached its contract with PMC by making payments to the Lebanon Account instead of the Kuwait Account. After a pre-trial conference, the parties submitted a discovery plan, representing that all discovery would be completed by April 13, 2012. The district court set a trial date of August 15, 2012. During discovery, DynCorp learned that at least some of the funds it had paid into the Lebanon Account had been used to pay obligations of PMC. In particular, DynCorp learned that PMC's primary subcontractor in Iraq, Cater-Corp, had received significant payments from the Lebanon Account.

After the close of discovery, DynCorp moved for partial summary judgment on the issue of whether the Subcontract had

been modified "to permit instructions on each individual invoice submitted by PMC to DynCorp to determine the account into which DynCorp's payments were to be made." (J.A. 77.) The district court granted partial summary judgment to DynCorp, concluding that the parties' method of changing banking instructions on the face of PMC's invoices complied with the requirements in the Subcontract for modification. The district court denied summary judgment in part by expressly declining to conclude that either Fawaz or Byers had actual or apparent authority to modify the payment instructions in the Subcontract because genuine issues of material fact remained to be decided at trial as to that issue.

On May 31, 2012, following the district court's summary judgment order and the close of discovery, PMC disclosed its damages calculation. PMC claimed $7,664,638.22 in total damages, $6,920,501.56 of which represented the entire amount previously paid by DynCorp into the Lebanon Account. The remaining $744,136.66 was for unpaid invoices that remained outstanding. DynCorp and PMC later settled PMC's claim with respect to the $744,136.66 of unpaid invoices. Thus, only the $6.92 million that DynCorp paid into the Lebanon Account is at issue here.

DynCorp filed a motion in limine to preclude PMC from presenting its damages calculation at trial. DynCorp argued that

6

PMC improperly withheld its damages calculation until after the close of discovery, leaving DynCorp with no ability to take discovery relating to damages or to address the damages issues on summary judgment. In addition, DynCorp argued that PMC's damages calculation was contrary to well-established law because it failed to account for millions of dollars paid from the Lebanon Account to PMC employees and subcontractors in satisfaction of PMC obligations. Further, DynCorp argued that PMC had intentionally withheld documents showing that funds were paid from the Lebanon Account to satisfy PMC obligations with the contemporaneous knowledge of PMC's owners.

DynCorp also moved the district court to impose sanctions against PMC under the court's inherent authority to sanction a party for abusing the judicial process, as recognized in United States v. Shaffer Equipment Co., 11 F.3d 450, 461–63 (4th Cir. 1993). DynCorp argued that sanctions were warranted because PMC had concealed documents during discovery that evidenced PMC's knowledge of and acquiescence to Fawaz's use of the Lebanon Account to administer the Subcontract and pay PMC subcontractors and employees. In support of its motion, DynCorp represented that it received documents from a third party indicating that PMC participated in Fawaz's use of the Lebanon Account. Only after DynCorp received these third-party documents, and long

7

after the close of discovery, did PMC produce an additional 2,000 pages of documents demonstrating that PMC acquiesced to Fawaz's use of the Lebanon Account. This late production, DynCorp argued, prevented it from taking meaningful depositions of PMC's Rule 30(b)(6) representatives, Rabea Al-Muhanna and Philip Zacharia, and deprived DynCorp of access to evidence critical to its summary judgment motion. DynCorp also posited that PMC's late-produced documents revealed that PMC's Rule 30(b)(6) representatives[2] provided false or misleading testimony and that PMC provided false interrogatory answers.

The district court conducted hearings on DynCorp's motions and granted the motion for sanctions, finding that "PMC failed to produce relevant and requested documents in a timely manner." (J.A. 83.) Finding that the factors listed in Shaffer Equipment were applicable, the district court held that PMC's "failure of discovery warrant[ed] the imposition of sanctions." (J.A. 83.) Although DynCorp had requested that the district court dismiss PMC's claim as sanctions for PMC's discovery abuse, the district

---

[2] Under Rule 30(b)(6) of the Federal Rules of Civil Procedure, when an organization is required to provide testimony in a civil trial, that organization must "designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify."

8

court declined to do so. Instead, the district court ordered PMC to produce both of its Rule 30(b)(6) designees for additional depositions before August 11, 2012, at a place of DynCorp's choosing, costs to be borne by PMC. The district court further ordered that the factual substance of each late-produced document be deemed admitted pursuant to Rule 37(c)(1)(C) of the Federal Rules of Civil Procedure. The district court deferred any further decision on DynCorp's motion for sanctions, holding in abeyance "any decision to award a monetary sanction against PMC for its discovery defalcation," (J.A. 85), and deferred its decision on DynCorp's motion in limine, "pending the parties [sic] submission of further briefs related to the proper measure of damages and the timeliness of PMC's disclosure of this measure." (J.A. 85.)

PMC filed for a protective order to relieve it from having to produce Zacharia for deposition and from having to produce Al-Muhanna until August 13, 2012, two days before the trial date. DynCorp renewed its motion in limine on the damages issue and again sought dismissal of the case under the district court's inherent authority to impose sanctions. The district court found that the partial remedies it had previously imposed had failed to "ameliorat[e] the significant prejudice to DynCorp stemming from the discovery defalcations." (J.A. 88.) Still, the

9

district court expressly declined to dismiss the case and instead ordered PMC to produce its Rule 30(b)(6) witnesses by August 13, 2012. The district court deferred ruling on DynCorp's motion in limine and made clear that it would consider additional sanctions, including dismissal, if PMC failed to ameliorate the prejudice that its discovery defalcations caused DynCorp.[3]

On August 13, PMC offered Al-Muhanna and Zacharia for deposition. However, PMC also informed DynCorp that Al-Muhanna and Zacharia were no longer its Rule 30(b)(6) witnesses and offered Mohammed Roof as its new Rule 30(b)(6) representative. PMC also continued to produce additional relevant documents that

---

[3] The district court stated that

> [b]ecause the remedies for PMC's discovery defalcations fell far short of remedying the prejudice, DynCorp orally renewed their motion to dismiss. The Court denied that motion from the bench and instead ordered PMC to produce its Rule 30(b)(6) witnesses by Monday, August 13, 2012. Although the motion to dismiss was denied, the Court made clear that it would reconsider if the remedies for PMC's discovery defalcations fail to ameliorate the prejudice DynCorp suffered, given the proximity of the trial date.

(J.A. 88.)

10

it had not previously disclosed, some of which were written in Arabic. DynCorp then submitted a supplemental memorandum to the district court, renewing its motion in limine and requesting that the district court strike PMC's claim of damages or alternatively, dismiss the case. On August 15, the district court heard argument on and granted DynCorp's motion in limine. The district court noted that "[t]hroughout the pendency of the case, PMC has consistently asserted that the proper measure of PMC's damages for the breach of the Subcontract is the total amount of money DynCorp paid into the Lebanon [A]ccount." (J.A. 95.) And in pursuing that theory of damages, PMC continually "refused to comply with DynCorp's discovery requests aimed at ascertaining the identity of PMC's subcontractors, the subcontracts between PMC and those entities, and whether monies were paid from the Lebanon [A]ccount to PMC's subcontractors and employees for work done in connection with the Subcontract." (J.A. 96.) The district court concluded that, as a matter of law, PMC bore the burden of proving not only the amount of money received from DynCorp through the Lebanon Account, but also the costs avoided by the fact that some of PMC's subcontractors and employees were paid out of the Lebanon Account, relieving PMC of the obligation to pay those debts. The district court thus held

11

that PMC's measure of damages was improper and contrary to law and ordered PMC's claim for damages to be excluded from trial.[4]

The district court also reconsidered sanctions against PMC and found that the prior remedies it had ordered fell "far short of remedying the prejudice" to DynCorp caused by PMC's continuing discovery defalcations. (J.A. 102.) The district court detailed the extent of PMC's abusive behavior in this case: PMC did not provide its measure of damages until after the close of discovery; PMC refused to account for costs avoided in its measure of damages, as required by law; PMC withheld documents showing that funds were paid from the Lebanon Account to PMC subcontractors; and PMC withheld documents showing that PMC ownership had contemporaneous knowledge of those payments. Specifically, the district court found that PMC improperly withheld a number of documents showing that Al-Muhanna contemporaneously knew that funds from the Lebanon Account were being used to satisfy PMC obligations. The district court then found that these documents directly contradicted Al-Muhanna's deposition testimony that PMC had ceased payments to its

_____

[4] Because PMC did not present an alternate theory of damages, the district court's exclusion of PMC's claim of damages against DynCorp left PMC able to pursue only nominal damages for breach of contract.

12

subcontractors and employees once DynCorp began making payments to the Lebanon Account. The district court also concluded that PMC gave a false answer to an interrogatory when it was asked to "[i]dentify all funds received by PMC from the Lebanon [A]ccount, . . . as well as all payments from the Lebanon [A]ccount to satisfy obligations of PMC." (J.A. 1594.) PMC answered that it "has not received funds from Mr. Fawaz's Lebanon [A]ccount, and it is not aware of the extent, if any, to which payments were made from Mr. Fawaz's personal account in Lebanon to satisfy . . . obligations of PMC." (J.A. 1594–95.) The district court found that it was "clear that PMC knew that some funds had been paid from the Lebanon [A]ccount to [PMC] subcontractors." (J.A. 1595.)

The district court also noted that PMC's Rule 30(b)(6) witnesses refused to be deposed before August 11 as ordered and were not available for deposition until August 13, two days before the trial date. It noted that PMC sent a series of late-night emails on August 12, producing a number of documents contained in 135 separate PDF and Excel attachments for the August 13 depositions, which were scheduled to begin at 9:30 the next morning. On the morning of the 13th, PMC delivered two boxes of documents to DynCorp, including documents that had not yet been produced and new documents that were written in Arabic.

13

PMC also took the position that neither Al-Muhanna nor Zacharia was appearing as a Rule 30(b)(6) deponent and named an entirely new Rule 30(b)(6) witness. And when DynCorp took the new depositions of Al-Muhanna and Zacharia, both witnesses gave evasive and unresponsive answers to the questions propounded.

The district court again evaluated PMC's conduct under the standard in Schaffer Equipment, invoking its "inherent authority" to "impose sanctions up to, and including, the 'most extreme sanction,' the 'dismissal without deciding the merits.'"[5] (J.A. 102 (quoting Schaffer Equip., 11 F.3d at 462).) The district court concluded that PMC was highly culpable in its discovery defalcations and that DynCorp was significantly prejudiced by PMC's actions. The district court further concluded that its prior sanctions did not remedy the prejudice to DynCorp. Because no further actions on PMC's part could remedy the harm to DynCorp, the district court concluded that involuntary dismissal was warranted. The district court dismissed PMC's case with prejudice and entered its final judgment on September 7, 2012.

---

[5] The district court noted that it also had the power to impose sanctions under Rule 37(b) of the Federal Rules of Civil Procedure, but placed its "principal reliance on its inherent powers." (J.A. 102 n.10.)

14

PMC timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

## II.

We review a district court's decision to exercise its inherent power to dismiss a case for an abuse of discretion. Shaffer Equip., 11 F.3d at 462. We also review a district court's grant of a motion in limine for an abuse of discretion. Malone v. Microdyne Corp., 26 F.3d 471, 480 (4th Cir. 1994).

## III.

PMC principally argues on appeal that the district court abused its discretion by imposing a sanction of dismissal of its case against DynCorp.[6] We have previously recognized that, "[d]ue to the very nature of the court as an institution, it must and does have an inherent power to impose order, respect, decorum,

---

[6] PMC also challenges the district court's grant of DynCorp's motion in limine and dismissal of PMC's claim for damages as being contrary to the applicable contract law. PMC further argues that the district court improperly granted DynCorp's motion for summary judgment, contending that genuine issues of material fact existed that required determination by the trier of fact. Because we affirm the district court's exercise of its inherent authority to dismiss PMC's case as sanctions for PMC's abuse of the discovery process, we need not address PMC's remaining claims.

silence, and compliance with lawful mandates." Shaffer Equip., 11 F.3d at 461. A court's inherent power includes the ability to order the dismissal of a case, though "such orders must be entered with the greatest caution." Id. at 462. Orders of dismissal are appropriate "when a party deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process." Id.

Before exercising its inherent power to dismiss a case based on the wrongdoing of a party in the judicial process,

> a court must consider the following factors:
> (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that we seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest.

Id. at 462–63.

In this case, the district court concluded that all six Shaffer Equipment factors weighed in favor of dismissal and that "[t]he course of this litigation has been marred by PMC's discovery defalcations." (J.A. 100.) The court set out in extensive detail the particulars of PMC's discovery abuse and

16

linked those abuses to each of the Shaffer Equipment factors. (J.A. 1573-96.) With respect to the first factor, the district court found that "there is a high degree of culpability" on the part of PMC. (J.A. 1592.) In support of this conclusion, the district court found that PMC made a calculated effort to shield its damages claim from the crucible of discovery by providing false answers to interrogatories, providing false deposition testimony, withholding a large number of relevant documents during discovery, and making late disclosures of material significance that continued until the day before trial was to begin. The district court then addressed the second factor, concluding that "PMC, the client rather than counsel, has committed serious discovery defalcations." (J.A. 103.)

In considering the third, fourth, and fifth factors, the district court found that "these defalcations have caused substantial prejudice to the judicial process; DynCorp has suffered serious prejudice; and, the several attempts to provide partial remedies have failed." (J.A. 103.) The district court supported these conclusions by finding that PMC's willful failure to produce relevant documents precluded DynCorp from conducting effective discovery or taking effective depositions of Al-Muhanna or Zacharia, PMC's Rule 30(b)(6) designees. The district court then recounted that although it had previously

17

imposed lesser sanctions, including ordering PMC to produce Al-Muhanna and Zacharia for additional depositions and ordering all facts contained in withheld documents to be deemed admitted, it had declined to impose the sanction of dismissal. The district court further found that, notwithstanding its initial forbearance, PMC's unabated obstruction and defiance made clear that those lesser sanctions did not remedy the prejudice to DynCorp or deter PMC's conduct.

Addressing the sixth factor, the district court noted that "certainly there's a public interest in ensuring the integrity of the judicial process." (J.A. 1581.) Consequently, as "each of the Shaffer Equipment factors weigh[ed] firmly . . . in favor of dismissing the case," the district court imposed the sanction of dismissal. (J.A. 102–03.)

PMC makes a number of arguments on appeal, none of which support reversal of the district court's order. Among other things, PMC argues that Al-Muhanna did not, in fact, provide false testimony. However, our review of the record demonstrates that the district court's finding that Al-Muhanna testified falsely at her deposition is not clearly erroneous. In her deposition, Al-Muhanna was asked, "Has PMC . . . attempted to determine in any way any benefits PMC received from payments from the Lebanon [A]ccount in connection with the [Subcontract]

18

with DynCorp?" (J.A. 1586–87.) Al-Muhanna answered, "I don't know if I could answer. But for us, PMC is [an] illegal account. [The] Lebanon bank account is illegal. So I cannot assume that there [are] any payments that came from it in the correct—I don't know what the word is." (J.A. 1587.) Al-Muhanna was then asked, "Do you know if PMC received any benefit in connection with the [Subcontract] with DynCorp from payments made out of the Lebanon [A]ccount?" She answered, "No." (J.A. 1587.)

Al-Muhanna's testimony is directly contradicted by, among other things, an email she sent on June 3, 2009, in which she asked to see "the invoices for the payment done by Mr. Hussein [Fawaz]," showing that she knew that Fawaz was making payments out of the Lebanon Account during the term of the Subcontract. (J.A. 978.) On August 31, 2009, Al-Muhanna received another email detailing Fawaz's payments of PMC staff salaries out of the Lebanon Account. (J.A. 991.) And on May 18, 2010, Al-Muhanna's staff received from Fawaz a spreadsheet providing a full accounting of deposits into both the Lebanon Account and the Kuwait Account as well as expenses paid by PMC out of each account. (J.A. 1121–48.) Thus, the district court's finding that Al-Muhanna provided false deposition testimony is fully supported by facts in the record. Cf. F.C. Wheat Mar. Corp. v. United States, 663 F.3d 714, 723 (4th Cir. 2011) (holding that a

19

court of appeals may reverse a factual finding reviewed for clear error only when "left with a definite and firm conviction that a mistake has been committed").

PMC also argues that it was improper for the district court to consider its false interrogatory response because DynCorp did not raise the false interrogatory response as a reason for granting sanctions in its motion. Yet PMC points to no legal authority suggesting that a district court is limited to the precise arguments raised by the parties when the court is exercising its inherent authority to impose sanctions consistent with Shaffer Equipment. While a district court acting under Rule 37(b) of the Federal Rules of Civil Procedure would be constrained by the terms of that Rule, a court acting under its inherent authority may impose sanctions for any "conduct utterly inconsistent with the orderly administration of justice." United States v. Nat'l Med. Enters., Inc., 792 F.2d 906, 912 (9th Cir. 1986). Compare Buffington v. Balt. Cnty., Md., 913 F.2d 113, 132 n.15 (4th Cir. 1990) (holding that a court may impose sanctions under Rule 37(b) "only to violations of a court order to permit or provide discovery, or one in regard to a discovery conference"), with Shaffer Equip., 11 F.3d at 461 (holding that a court's inherent power to dismiss a case "is organic, without

20

need of a statute or rule for its definition, and it is necessary to the exercise of all other powers").

In fact, a district court exercising its inherent authority to impose sanctions may do so sua sponte and must consider the whole of the case in choosing the appropriate sanction. See Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 246 (1944) ("The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud."), abrogated on other grounds by Standard Oil Co. of Cal. v. United States, 429 U.S. 17 (1976); Brickwood Contractors, Inc. v. Datanet Eng'g, Inc., 369 F.3d 385, 389 n.2 (4th Cir. 2004) (noting that the court has the authority to impose sanctions sua sponte under either Rule 11 or under the court's inherent authority); In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 278 F.3d 175, 189-91 (3d Cir. 2002) (affirming the imposition of sanctions after assessing the totality of the sanctioned attorney's conduct before the court).

In this case, the district court dismissed PMC's claim in an exercise of its inherent authority and was therefore entitled to consider sanctions on its own motion and without any limitation on the types of conduct that it could consider. See Shaffer Equip., 11 F.3d at 462. PMC was on clear notice of the

district court's consideration of the use of its inherent authority and had a full opportunity to argue its position before the court. Moreover, the district court's finding that PMC provided a false interrogatory answer is amply supported by facts in the record. When asked in Interrogatory No. 12 to "[i]dentify all funds received by PMC from the Lebanon [A]ccount, as well as all payments from the Lebanon [A]ccount to satisfy obligations of PMC," PMC responded "PMC has not received funds from Mr. Fawaz's Lebanon [A]ccount, and it is not aware of the extent, if any, to which payments were made from Mr. Fawaz's personal account in Lebanon to satisfy [obligations] of PMC." (J.A. 733.) As noted earlier, this answer is contradicted by the emails of June 3, 2009, August 31, 2009, and May 18, 2010, all of which demonstrate that Al-Muhanna had personal, contemporaneous knowledge of Fawaz's use of the Lebanon Account to pay PMC's indebtedness to subcontractors and employees, some of which payments were substantial.

PMC similarly fails to challenge any of the district court's other findings supporting its dismissal of PMC's claim. PMC flatly asserts that the district court's culpability finding is not supported by substantial evidence, referring back to its previous arguments that Al-Muhanna did not give false testimony and that it answered Interrogatory No. 12 truthfully. As

22

reflected above, our review of the record demonstrates that the district court's culpability finding was not made in clear error. That finding is supported by the conflict between PMC's deposition testimony and PMC's answer to Interrogatory No. 12, and the emails of June 3, 2009, August 31, 2009, and May 18, 2010.

PMC also asserts in a single sentence, without citation to the record or to any authority, that neither DynCorp nor the judicial process suffered prejudice because DynCorp received all relevant documents before the trial date. PMC does not address, however, the fact that many of these documents were produced long after the close of discovery—through and including the day before trial—depriving DynCorp of the opportunity to effectively depose PMC's Rule 30(b)(6) representatives and to conduct effective discovery and adequately prepare for trial. In any event, by failing to support its contentions "with citations to the authorities and parts of the record on which [it] relies," PMC has waived this argument. Fed. R. App. P. 28(a)(9)(A); see also Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 607 (4th Cir. 2009).

PMC last posits that other, lesser sanctions could have remedied the prejudice to DynCorp and that public policy favors deciding cases on the merits. While it is true that we recognize

23

a "strong policy that cases be decided on the merits," Shaffer, 11 F.3d at 462, we also recognize "the need to preserve the integrity of the judicial process in order to retain confidence that the process works to uncover the truth." Silvestri v. Gen. Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001) (emphasis added). The district court found that PMC intentionally acted throughout the pre-trial process to hide the truth from both DynCorp and from the court. And the district court first imposed lesser sanctions, but later found that those lesser sanctions did not alleviate the prejudice caused by PMC. Accordingly, PMC has not demonstrated that the district court here abused its discretion.

For the above reasons, we affirm the district court's dismissal of PMC's case against DynCorp as a sanction for its discovery malfeasance.


IV.

For all the foregoing reasons, the judgment of the district court is

AFFIRMED.