Am. Transp. Grp. Ins. Risk Retention Grp. v. MVT Ins. Servs., Inc., 2021 NCBC 8.

STATE OF NORTH CAROLINA

COUNTY OF NEW HANOVER

AMERICAN TRANSPORTATION GROUP INSURANCE RISK RETENTION GROUP,

Plaintiff,

v.

MVT INSURANCE SERVICES, INC.; AMRIT SINGH; ELEAZAR ROJAS; and SHAMSHER SINGH,

Defendants,
and

MVT INSURANCE SERVICES, INC.,

Defendant and Third-Party Plaintiff,

v.

PALMETTO CONSULTING OF COLUMBIA, LLC AND MATTHEW A. HOLYCROSS,

Third-Party Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20 CVS 1487

**ORDER AND OPINION ON MOTION TO SHOW CAUSE AND FOR SANCTIONS, MOTIONS TO DISMISS, MOTION FOR JUDGMENT, AND MOTION FOR PRE-FILING INJUNCTION**

THIS MATTER is before the Court on Plaintiff American Transportation

Group Insurance Risk Retention Group's ("ATGI") Motion to Show Cause and for

Sanctions ("Motion for Sanctions," ECF No. 45)[1]; ATGI's Partial Motion to Dismiss and Partial Motion for Judgment on the Pleadings ("Partial 12(b)(6) and 12(c) Motion," ECF No. 53); Palmetto Consulting of Columbia, LLC ("Palmetto") and Matthew A. Holycross's ("Holycross") (collectively, the "Third-Party Defendants") Motion to Dismiss Third-Party Complaint ("MTD Third-Party Complaint," ECF No. 60); and Third-Party Defendants' Motion for Pre-Filing Injunction ("Motion for Pre-Filing Injunction," ECF No. 94; collectively, the various motions are referred to as the "Motions").

THE COURT, having considered the Motions, the briefs filed in support of the Motions, the evidentiary materials filed by Plaintiff and Third-Party Defendants, the arguments of counsel at the hearing on the Motions, the applicable law, and other appropriate matters of record, CONCLUDES, in its discretion, that the Motion for Sanctions should be GRANTED, in part, and DENIED, in part, and accordingly, the Partial 12(b)(6) and 12(c) Motion, the MTD Third-Party Complaint, and the Motion for Pre-Filing Injunction should be DISMISSED as MOOT.

*Butler Snow, LLP by Scott J. Lewis, and K&L Gates LLP by Jason W. Callen and Beau C. Creson, for Plaintiff American Transportation Group Insurance Risk Retention Group*

*Pro se Defendants Eleazar Rojas, Amrit Singh, and Shamsher Singh*

*Sharpless McClearn Lester Duffy, PA by Frederick K. Sharpless and Melanie C. Cormier for Third-Party Defendants Matthew A. Holycross and Palmetto Consulting of Columbia, LLC*

---

[1] The Court first considers the requests for sanctions in the Motion for Sanctions. To the extent Plaintiff seeks an order of contempt against Defendants in the Motion for Sanctions, that request ("Request for Civil Contempt") is addressed separately by the Court below.

McGuire, Judge.

## I.    FINDINGS OF FACT[2]

1.    On October 16, 2020, the Court entered a Preliminary Injunction (ECF No. 44) against Defendants MVT Insurance Services, Inc. ("MVT"), Amrit "Andy" Singh ("A. Singh"), Eleazar Rojas ("Rojas"), and Shamsher Singh ("S. Singh") (collectively, MVT, A. Singh, Rojas, and S. Singh are "Defendants"), which ordered the following:

1.    A. Singh and MVT are I**MMEDIATELY ENJOINED** and **PROHIBITED**, directly or indirectly, alone or in concert with others, during the pendency of this lawsuit or until further order of this Court from purporting to act on behalf of ATGI or ATGA or otherwise holding themselves out as officers or authorized representatives of ATGI or ATGA;

2.    S. Singh and Rojas are **IMMEDIATELY ENJOINED** and **PROHIBITED**, directly or indirectly, alone or in concert with others, during the pendency of this lawsuit or until further order of this Court, from speaking on ATGI's or ATGA's behalf or holding themselves out as officers of ATGI or ATGA or otherwise empowered to bind ATGI or ATGA to any third party beyond the specific rights granted to them as Directors by ATGI's Bylaws and North Carolina Law so long as they serve, if they serve, in that capacity;

3.    All Defendants are **IMMEDIATELY ENJOINED** and **PROHIBITED**, directly or indirectly, alone or in concert with others, during the pendency of this lawsuit or until further order of this Court, from:
    i.    Seeking to make any material change in ATGI's management or terminating any of

---

[2] The procedural and factual background of this matter are set out in this Court's Order on Amended Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 40), and the Order on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction ("Preliminary Injunction," ECF No. 44).

ATGI's service providers absent approval by the Department; and

ii. Taking any action causing ATGI to violate the Order of Supervision.

(ECF No. 44, at pp. 9–10.)[3] The Court will summarize, chronologically, the events that have transpired since the issuance of the Preliminary Injunction.

2. Immediately after the Preliminary Injunction was issued, Defendants began violating its terms by representing themselves as still affiliated with ATGI and communicating with numerous ATGI constituents. On October 17, 2020, through various email addresses associated with one or more of the Defendants, Defendants emailed two representatives of the North Carolina Department of Insurance ("NCDOI") and numerous ATGI service providers.[4] (Aff. of Michael Hunter[5] ("Hunter") ISO ATGI's Mot. for TRO and PI, ECF No. 46.1, at ¶¶ 2–3; hereinafter, the "First Hunter Affidavit".)

3. One such email, dated October 17, 2020 and purportedly written on behalf of ATGI, stated:

> now atgi announces in front of respected media and atgi
> will start writing as of oct 19.
> Atgi is in full compliance

---

[3] The language of the Preliminary Injunction was drafted and jointly submitted by counsel for ATGI and Defendants.

[4] The recipients of Defendants' emails included: Debbie Walker and Kait Chase (NCDOI representatives); Ted Davey, Rick Lindsey, Vik Jain, Ryan Guest, and Philip Winter (ATGI insurance producers); Gene Brodsky (ATGI insurance producer and claims adjuster); Dick Crnkovich (CEO of Imperial Premium Finance Services, which has financed a number of ATGI policies); Nichoas Teetelli (CEO of Maple Technologies, which provides ATGI's policy management software); and Michael Pollano (employee of Bank of the West, which is one of ATGI's banks). (ECF No. 46.1, at ¶3.)

[5] Hunter is the current president of ATGI.

> Atgi will be recovering a major fraud by a highly professional atgi hired and paid them handsome money. Atgi requests the court Atgi needs a fresh start. Atgi needs time to fully restore all his data, books and all the stolen property of atgi need to return immediately. . . .
> This case is a simple case…atgi fixed it compliance in february and needed permission to start writing.
> …

(*Id*. at Ex. 1.)  The same day, Defendants sent another email which warned against dealing with ATGI's current management and Board of Directors ("Board"):

> ATGI has fraudulent board issues until you see any order then you deal with the new board if not mvt is mga until further court order.
> If you are dealing with a fraud board it will be your responsibility for every you deal with the fraud board.
> In my understanding atgi has provided every single document to nc doi and is in full compliance.

(*Id*. at Ex. 2.)

4.      On October 18, 2020, Defendants sent another email to the same recipients as the October 17, 2020 emails, *see supra* n.4, stating:

> Today Sahmsher singh announced that Atgi will be writing soon. ATGI has gone through disaster. And it was conspiracy, scam, greed, and well plan fraud. . . . .
> All atgi service providers please contact Andy singh and nirmal kaur of mvt insurance services until further court order.
> …

(*Id*. at Ex. 3.)  The same day, two of ATGI's top insurance producers—Philip Winter ("Winter") and Gene Brodsky ("Brodsky")—received an email from S. Singh, stating:

> I Shamer president announced ATGI fresh start as of 10/19/20 at 8:00 am pdt and in control of mvt insurance services inc at 830 stweart dr unit 147 sunnyvale california 94086.
> and following recognized atgi team

> Shansher singh president atgi
> Eleazar rojas independent atgi
> Scott sypher nc resident director atgi (until new honest nc director replaced)
> Matt Holly cross captive manager atgi (until new honest captive manager found)
> Mvt insurance services inc as mga
> Andy singh and nirmal kaur recognized director and underwriter for mvt for atgi
> Ameet bring of sodhi law firm council for atgi
> …

(*Id.* at ¶ 5, Ex. 4.)  Further, S. Singh stated that "until further court order and proper investigation mike hunter (fraud president) cannot represent himself as president of ATGI." (*Id.*)

5.    On October 19, 2020, Defendants emailed Matt Holycross (ATGI's captive manager) and Scott Syphers (a member of ATGI's Board), stating: "Mr. shamsher singh here gives you 30 days notice that we are terminating your services. as of 11/19/20 you will not be any longer with atgi. We are not happy with your services." (*Id.* at ¶ 6, Ex. 5.)  The same day, Defendants emailed Brodsky stating: "please send all the payment to mvt insurance service inc otherwise all policy will be cancelled for non payments." (*Id.* at ¶ 5, Ex. 6.)  Further, Defendants emailed Chan Tran (an ATGI insured) stating "please contact immediately four office or by 10/20/20 atgi will cancel all your policy and will not be reinstated." (*Id.* at ¶ 8, Ex. 7.)  All three of the above-mentioned emails included a signature block that identified the sender(s) as:

> Andy Singh
> Senior Market Analyst
> Alternative Risk Manager

> Mvt Insurance Services inc.
> Assitant
> Secretary President ATGI Shamsher Singh
> Secretary ATGI Director Eleazar Rojas

(*Id*. at Exs. 5–7.) Also on October 19, 2020, Rojas emailed the NCDOI, stating "Amrit Singh is the real founder of atgi please advise how we can add him as a director." (*Id*. at Ex. 8.)

6. On October 20, 2020, S. Singh emailed the NCDOI complaining, *inter alia*, that "mr amrit singh founder of atgi" was not added as a director. (*Id*. at Ex. 9.) The same day, Defendants emailed several individuals, including insurance producer Vik Jain, stating:

> hello All Agents,
> all atgi policy has been canceled as of today. And no coverage has been effect as of jan 1 2020. mr philip winter and his team has pocketed all the money and you can apply refunds from philip winter,
> This will be tomorrow email pleaselet me know if you want pay or refund the agents.
> more lawsuits and more troubles.

(*Id*. at ¶ 10, Ex. 10.) Defendants forwarded this email to Winter and Janet Elliot (Winter's agent) stating, "[o]n your refunds please make a inquiry with philip winter or janet eiiliot" and included the previously-described signature block. (*Id*. at Exs. 10–11.)

7. On October 21, 2020, as a result of Defendants' actions, ATGI filed its Motion for Sanctions seeking an "entry of a show cause order, and upon a finding that Defendants are in civil contempt, sanctions that include dismissal of Defendants' counterclaims and awarding ATGI's attorneys in bringing and pursing

the th[e] motion." (ECF No. 45, at p. 2.) On October 26, 2020, ATGI filed its Partial 12(b)(6) and 12(c) Motion, seeking dismissal of various counterclaims filed by Defendants (ECF No. 53), and on November 2, 2020, Third-Party Defendants filed their MTD Third-Party Complaint (ECF No. 60).

8. On October 26, 2020, attorney William Taylor ("Taylor") moved to withdraw as counsel for Defendants, citing fundamental disagreements with his clients.[6] (Mot. to Withdraw as Counsel, ECF No. 51 (hereinafter, the "Motion to Withdraw").) The Court held a hearing on the Motion to Withdraw on October 29, 2020 at which A. Singh, Rojas, and S. Singh were present. During the hearing, the Court strongly encouraged the Defendants to find new counsel and to avoid representing themselves individually if at all possible, and stated its intention to require Taylor to remain as Defendants' counsel for a period of approximately thirty days in order to allow Defendants time to seek new representation. The Court further advised Defendants that MVT would not be allowed to continue in this lawsuit without an attorney representing the corporation. *See LexisNexis, Div. of Reed Elsevier, Inc. v. Travishan Corps.*, 155 N.C. App. 205, 209, 573 S.E.2d 547, 549 (2002) ("[I]n North Carolina a corporation must be represented by a duly admitted and licensed attorney-at-law[.]")

---

[6] Notably, on October 8, 2020, Defendants' prior attorneys—William Pollock, Amie Sivon, and Kimberly Dixon of Ragsdale Liggett PLLC—were permitted to withdraw, after which attorney William Taylor became Defendants' counsel of record. (Ord. on Mot. to Withdraw as Counsel, ECF No. 41.)

9. On October 29, 2020, the Court issued its Order on Motion to Withdraw as Counsel, which allowed Defendants a thirty-day period in which to retain new counsel and required William Taylor to remain as Defendants' counsel of record through November 30, 2020. (Ord. on Mot. to Withdraw as Counsel, ECF No. 59, hereinafter, "Order on Motion to Withdraw".)

10. On November 4, 2020, a vendor notified ATGI that MVT and A. Singh were quoting insurance policies in the name of ATGI to retail insurance agents. (Aff. of Michael Hunter, ECF No. 62.1, at ¶¶ 2–3, Ex. 1 (hereinafter, "Second Hunter Affidavit").) ATGI contacted the retail service agent to whom A. Singh and MVT had made the quotes, which led to the discovery of emails further evidencing MVT and A. Singh's attempts to sell insurance policies on behalf of ATGI. (*Id*. at ¶¶ 4–5, Ex. 2.) While ATGI was able to prevent any policy from being issued in this instance, ATGI suspects that A. Singh and MVT have executed other insurance policies purportedly on behalf of ATGI. (*Id*. at ¶¶ 6–7.)

11. On November 5, 2020, A. Singh signed a contract, purportedly on behalf of ATGI, with an insurance policy data management software vendor, RiskVille. (*Id*. at ¶ 8, Ex. 3.) A. Singh signed as a "branch manager" of ATGI. (*Id*.) This software "appears to have [been] used to generate at least some of the policy quotes at issue." (*Id*. at ¶ 8.)

12. On November 9, 2020, Third-Party Defendants noticed A. Singh's deposition for December 11, 2020, and issued their First Set of Interrogatories, Requests for Production of Documents, and Requests for Admission to all

Defendants (the "Discovery Requests"). (ECF No. 127, at ¶¶ 6–7.) Defendants failed to respond to the Discovery Requests, and A. Singh failed to appear at his noticed deposition. (*Id*. at ¶¶ 12, 15.) In an email to Third-Party Defendants' counsel, A. Sing stated: "until a federal complaint is filed and fbi investigate this case all the people involved in this fraud including ncdoi officers and nc business court. i will not waste any more my time with you roaches." (ECF No. 127.5.)

13. Defendants failed to retain new counsel within the 30 days provided by the Court and, as a result, Defendants A. Singh, Rojas, and S. Singh decided to proceed *pro se*. On December 1, 2020, the Court issued an order directing Defendants to do the following:

> 1. Defendants Rojas and S. Singh shall each immediately create an individual account on the North Carolina Business Court's eFiling system, located at https://ncbc.nccourts.org/filer/.
>
> 2. On or before Monday, December 14, 2020, Defendants A. Singh, Rojas, and S. Singh shall file their responses [to] the Show Cause Motion (ECF No. 45). Any joint response must bear the electronic signature of each of the Defendants;
>
> 3. On or before Monday, December 21, 2020 Defendants A. Singh, Rojas, and S. Singh shall file their responses to Plaintiff's MTD and 12(c) Motion (ECF No. 53) and Third-Party Defendants' MTD (ECF No. 60). Any joint response must bear the electronic signature of each of Defendants;
>
> 4. All filings must conform to the requirements set out by the North Carolina Rules of Civil Procedure, and the North Carolina Business Court Rules ("BCR").

> 5. Defendant MVT is a corporation that is not represented by counsel, and therefore MAY NOT MAKE ANY FURTHER FILINGS in this case.

(ECF No. 77, at pp. 3–4.) Only A. Singh created an electronic filing account with the Court. Rojas and S. Singh did not establish accounts. None of the Defendants filed responses to the various motions.

14. On December 1, 2020 and December 2, 2020, A. Singh sent a flurry of subpoenas to various individuals and entities. (ECF Nos. 75–75, 79–88.) The subpoena forms require *pro se* parties to have the subpoena "signed and issued by the Clerk of Superior Court, or by a magistrate or judge."[7] (*See, e.g.*, ECF No. 90, at p. 4.) The only signature on these subpoenas was that of A. Singh. In one instance, A. Singh represented himself as an "Attorney/DA." (ECF No. 75, at p. 4.) As a result of A. Singh's actions, Third-Party Defendants filed their Motion for Pre-Filing Injunction seeking an order "prohibiting A. Singh from making any further filings or other requests for relief, or issuing subpoenas to third parties, . . . which relate in any way to this action without first obtaining express permission from this court." (ECF No. 94.)

15. On December 16, 2020, ATGI provided further evidence to the Court of contacts made by Defendants with vendors and insureds purportedly on behalf of ATGI. (Not. of Add. Evid. Supp. ATGI's Mot. to Show Cause and for Sanctions, ECF No. 106; Exs. A–P, ECF Nos. 106.1–106.16.) As just one example, on December 15,

---

[7] As a result, certain motions to quash (Mot. to Quash and Obj. to Subpoenas, ECF No. 93; NAMIC Insurance Co's Mot. to Quash, ECF No. 101) were granted by the Court. (Ord. on Mot. to Quash, ECF No. 98; Ord. on Namic Ins. Co. Inc.'s Obj. to and Mot. to Quash Subpoena, ECF No. 104.)

2020, a commercial truck agent sent ATGI an email inquiring as to the authenticity of emails from A. Singh regarding purported ATGI policy quotes. (ECF No. 106.16.)

16. In January 2021, Hunter provided the Court with sworn testimony that:

> ATGI recently discovered that one or more of the Defendants . . . have fraudulently issued policies, purportedly on behalf of ATGI. The defendants further gained unauthorized on-line access to ATGI's Federal Motor Carrier Safety Administration ("FMCSA") filing account, which enabled them to issue federal filings on this account, giving the appearance to the FMCSA and the public that the drivers had valid insurance coverage.

(Third Aff. of Michael Hunter ISO ATGI's Mot. to Show Cause and for Sanctions, ECF No. 119.1, at ¶ 2 (hereinafter, "Third Hunter Affidavit").) Further, Hunter stated "ATGI has so far uncovered 21 fraudulently issued policies by the Defendants," and has "informed the North Carolina and California Departments of Insurance as well as the Federal Motor Carrier Safety Administration" about Defendants' fraudulent conduct. (*Id.* at ¶ 6.)

17. To date, none of the Defendants have complied with the Court's directions regarding filing of responses to the Motions, nor have they complied with the requirement that filings conform to the BCRs. The Court noticed a hearing on the Motions for January 14, 2021 at which all Defendants were required to be present and visible via video "unless excused by the Court in advance for good cause shown." (Not. of Hearing, ECF No. 114.) At the hearing, A. Singh did not appear by video, but only by audio in violation of the Court's directive. Nevertheless, A. Singh repeatedly interrupted the hearing and was eventually expelled from the

hearing by the Court. S. Singh, who was present via video, provided argument on the Motions.[8]

18. Since the hearing, A. Singh has sent erratic and threatening email communications to the Court and Court staff. The emails contain attacks on the integrity of this Court as well as the attorneys and individuals involved in this matter. For example, in a January 25, 2021 email on which the Business Court law clerk assigned to this matter was copied, A. Singh wrote the following:

> you and your team back up right now once your neck is under my knee you will be crying like a little baby but that time I wont spare you take f[***]ing your dirty hand of my atgi, you game is over and you are just running on the borrowed time.
> everybody will pay for their own wrong doing. learn from your fellow citizens, you idiots. this should be enough warning for you.

(ECF No. 132.1.)

19. The Motions are ripe for determination.

## II. CONCLUSIONS OF LAW

20. In the Motion for Sanctions, ATGI seeks both "a finding that Defendants are in civil contempt" and an order imposing "sanctions that include dismissal of Defendants' counterclaims and awarding of ATGI's attorneys' fees in bringing and pursuing this motion." (ECF No. 45, at p. 2.) ATGI subsequently requested as additional relief that the Court "dismiss[ ] . . . MVT's and A. Singh's third-party claims" and "sanction MVT and A. Singh by entering default judgment on ATGI's claims against them." (ECF No. 62, at p. 5.) As noted above, Defendants

---

[8] Defendant Rojas was excused from the hearing due to a family emergency.

did not file any coherent or substantive responses, and did not file any evidence in opposition, to the Motion for Sanctions. Since the entire matter before the Court can be resolved through the Court's inherent authority to impose sanctions on a party engaging in misconduct, the Court will first address the Motion for Sanctions and then the Request for Civil Contempt.

A.    **Motion for Sanctions**

21.    The Court's resolution of the Motion for Sanctions is greatly aided by the Honorable Louis Bledsoe's thorough discussion of a North Carolina trial court's authority to sanction egregious misconduct by a party in a civil action in his recent Order and Opinion in *Red Valve, Inc. v. Titan Valve, Inc.*, 2019 NCBC LEXIS 57 (N.C. Super. Ct. Sept. 3, 2019). In *Red Valve*, Judge Bledsoe held as follows:

> Trial courts retain the inherent authority "to do all things that are reasonably necessary for the proper administration of justice." *Beard v. N.C. State Bar*, 320 N.C. 126, 129, 357 S.E.2d 694, 696 (1987). "[T]he power to sanction disobedient parties, even to the point of dismissing their actions or striking their defenses, . . . is longstanding and inherent." *Minor v. Minor*, 62 N.C. App. 750, 752, 303 S.E.2d 397, 399 (1983); *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) (holding that statutory schemes and court rules do not "displace[] the inherent power to impose sanctions for . . . bad-faith conduct," for statutory schemes and court rules, even when considered together, "are not substitutes for . . . inherent power"); *Daniels v. Montgomery Mut. Ins. Co.*, 320 N.C. 669, 674, 360 S.E.2d 772, 776 (1987) ("[W]e hold it to be within the inherent power of the trial court to order plaintiff to pay defendant's reasonable costs including attorney's fees for failure to comply with a court order."); *Cloer v. Smith*, 132 N.C. App. 569, 573, 512 S.E.2d 779, 782 (1999) ("The trial court . . . retains inherent authority to impose sanctions for discovery abuses beyond those enumerated in Rule

37.”); *Few v. Hammack Enters., Inc.*, 132 N.C. App. 291, 298-99, 511 S.E.2d 665, 670–71 (1999) (finding it was within the trial court's inherent authority to strike a party's answer for willful failure to comply with the rules of court); *Lomax v. Shaw*, 101 N.C. App. 560, 563, 400 S.E.2d 97, 98 (1991) (concluding trial court "was well within the bounds of the court's inherent authority to manage the case docket when he struck the defendants' answer" for failing to execute a consent judgment).

. . .

The imposition of sanctions is left to the sound discretion of the trial judge and "will not be overturned absent a showing of abuse of discretion." *Cloer*, 132 N.C. App. at 573, 512 S.E.2d at 782. A trial court will be held to have abused its discretion only "where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *E. Brooks Wilkins Family Med., P.A. v. WakeMed*, 244 N.C. App. 567, 578, 784 S.E.2d 178, 185 (2016) (quoting *Couch v. Private Diagnostic Clinic*, 146 N.C. App. 658, 667–68, 554 S.E.2d 356, 363 (2001)).

"North Carolina courts do not presently require the party requesting sanctions to demonstrate, as a part of its burden, that it suffered prejudice as a result of the opposing party's discovery failures or that the opposing party acted willfully." *Tumlin v. Tuggle Duggins P.A.*, 2018 NCBC LEXIS 51, at *31 (N.C. Super. Ct. May 22, 2018); *see Henderson v. Wachovia Bank of N.C., N.A.*, 145 N.C. App. 621, 629, 551 S.E.2d 464, 470 (2001). That said, "[w]illfulness, bad faith, or prejudice to another party" may influence the court's discretion "in determining the appropriate sanction." *Out of the Box Developers, LLC* [*v. LogicBit Corp.*], 2014 NCBC LEXIS 7, at *9 [(N.C. Super. Ct. Mar. 20, 2014)].

In assessing appropriate sanctions, North Carolina law is clear that a court may consider the entire record before it. *See Ray v. Greer*, 212 N.C. App. 358, 363, 713 S.E.2d 93, 97 (2011) (noting that trial court may "view of the totality of the circumstances of the case" in assessing appropriate sanctions (quoting *Badillo v. Cunningham*,

177 N.C. App. 732, 734–35, 629 S.E.2d 909, 911 (2006)));
*Batlle v. Sabates*, 198 N.C. App. 407, 420, 681 S.E.2d 788, 797–98 (2009) (affirming trial court's dismissal of plaintiff's complaint as a sanction where trial court considered "the totality of the circumstances of the case in determining the appropriate sanction" (internal quotation marks omitted)).  Indeed, "[w]hen sanctioning a party under its inherent authority, the court must weigh the circumstances of each case and choose a sanction that, in the court's judgment, 'properly takes into account the severity of the party's disobedience.'" *Out of the Box Developers, LLC*, 2014 NCBC LEXIS 7, at *10 (quoting *Patterson v. Sweatt*, 146 N.C. App. 351, 357, 553 S.E.2d 404, 409 (2001)).

Finally, in determining whether the issuance of serious sanctions pursuant to a court's inherent authority is proper, the North Carolina Supreme Court has looked to guidance from federal courts.  *See Daniels*, 320 N.C. at 674, 360 S.E.2d at 776. The United States Court of Appeals for the Fourth Circuit, in a panel joined by former North Carolina Business Court Judge Albert Diaz, has  held that serious sanctions, including the dismissal of an action, "are appropriate when a party deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process." *Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 373 (4th Cir. 2013) (citations and quotation marks omitted).   The Court finds *Project Management's* articulation persuasive and appropriate for application in this case.

2019 NCBC LEXIS 57, at *39–43.

22.     The facts discussed above establish that Defendants, and particularly A. Singh, have engaged in conduct warranting imposition of the most severe sanctions available to this Court.  *Out of the Box Developers, LLC*, 2014 NCBC LEXIS 7, at *10 ("[T]he court must weigh the circumstances of each case and choose a sanction that, in the court's judgment, 'properly takes into account the severity of

the party's disobedience.'"). Defendants have, *inter alia*: (i) deliberately and repeatedly violated the Preliminary Injunction by representing themselves to ATGI's customers and vendors as being affiliated with and authorized to conduct business on behalf of ATGI, fraudulently and unlawfully offering to sell and selling insurance policies and signing service contracts on behalf of ATGI, and gaining access to and manipulating ATGI's FMCSA filing account; (ii) made dozens of frivolous and incoherent filings with the Court; (iii) violated the Court's order requiring each Defendant to establish an individual filing account with the Court and to file separate responses to motions (with respect to Rojas and S. Singh), ignored the BCRs, and refused to respond to reasonable discovery requests from other parties to this lawsuit; and (iv) sent disrespectful and threatening communications to the Court and the Court's staff and engaged in violations of this Court's orders and rules that demonstrate contempt for the Court and its processes and a complete disregard for the rule of law. Accordingly, the Court will make short work of its analysis and order.

*i.    Violations of the Preliminary Injunction*

23.    The Court already has catalogued many of Defendants' intentional and egregious violations of the Preliminary Injunction and will not repeat them here. *See supra* ¶¶ 2–18. Suffice it to say that Defendants began violating the Preliminary Injunction as soon as it was issued and continued violating the order up to the date of the hearing on the Motion for Sanctions. A number of these violations, including offering for sale and selling of non-existent insurance policies,

and manipulating ATGI's FMCSA filing account, have potentially jeopardized the public's safety and well-being.

*ii.    Frivolous and incoherent filings; disregard for Court's rules*

24.    Since being permitted to proceed in this case *pro se*, A. Singh has made many filings on the Court's docket, not one of which contained a coherent recitation of facts or evidence relevant to the issues in this case or a single legal argument with citation to law.  To the contrary, A. Singh's rambling and incomprehensible filings, for the most part, simply continue to repeat his claims that he and the other Defendants have somehow been defrauded by ATGI's current management personnel and its lawyers, and that the Preliminary Injunction was improperly or negligently issued.  Further, none of A. Singh's filings have adhered to the requirements of the BCRs.

*iii.    Violation of the Court's order to establish filing accounts and make separate filings*

25.    Rojas and S. Singh violated this Courts' order requiring them to create electronic filing accounts with the Business Court.  This has made the task in making certain that Rojas and S. Singh are kept apprised of the Court's proceedings exponentially more difficult.  They also have refused to make their own separate filings with the Court.

*iv.    Threatening and disrespectful communications to the Court*

26.    Finally, A. Singh has sent the Court threatening and disrespectful email communications.  This conduct cannot be tolerated.

27.     The entire record before the Court establishes that Defendants have "abuse[d] the [Court's] process[es] at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process." *Projects Mgmt. Co.*, 734 F.3d at 373.  Therefore, upon consideration of the evidence before the Court and other appropriate matters of record, and the applicable law, the Court CONCLUDES, in its discretion, that the appropriate sanctions in this matter are (a) striking Defendants' respective Answers to the Complaint (ECF Nos. 13, 14, and 15), (b) entering default judgment against the Defendants and in favor of ATGI as to the claims in the Complaint, (c) and dismissing with prejudice Defendants counterclaims against ATGI and their claims against Third-Party Defendants.

28.     The Court, as it must, has considered whether lesser sanctions would be sufficient to address Defendants' conduct.  *Few*, 132 N.C. App. at 299, 511 S.E.2d at 671 (stating "[t]he Court is mindful that striking a party's answer is a severe sanction which should only be imposed where the trial court has considered less severe sanctions and found them to be inappropriate" (citing *Triad Mack Sales & Serv. v. Clement Bros. Co.*, 113 N.C. App. 405, 409, 438 S.E.2d 485, 488 (1994)). However, Defendants' utter disregard for the Court's prior orders, the Court's rules and procedures, and the Court's authority, lead the Court to conclude that Defendants will not, under any circumstances, conduct themselves in a lawful or reasonable manner in this proceeding.  Accordingly, the Court CONCLUDES, in its

discretion, that the imposition of lesser sanctions would not be sufficient to address the conduct at issue nor would they be in the interests of justice.

## B. Request for Civil Contempt

29. A party's failure to comply with a court order may constitute "continuing civil contempt as long as" the following conditions are met:

> (1) The order remains in force;
>
> (2) The purpose of the order may still be served by compliance with the order; (2a) The noncompliance by the person to whom the order is directed is willful; and
>
> (3) The person to whom the order is directed is able to comply with the order or is able to take reasonable measures that would enable the person to comply with the order.

N.C.G.S. § 5A-21(a).

30. A court's only means of compelling compliance of a person found in civil contempt is imprisonment for as long as the civil contempt continues, subject to certain time limitations. *See* N.C.G.S. § 5A-21(b). An order holding a party in civil contempt must specify how the party may "purge himself or herself of the contempt," N.C.G.S. § 5A-23(e), and imprisonment must end once the person has purged himself or herself of contempt, N.C.G.S. § 5A-22(a). "Because civil contempt seeks to coerce compliance rather than to punish, the purge provision is essential to a civil contempt order." *Ray Lackey Enters., Inc. v. Vill. Inn Lakeside, Inc.*, 2016 NCBC LEXIS 9, at *23 (N.C. Super. Ct. Jan. 29, 2016) (citing *Bethea v. McDonald*, 70 N.C. App. 566, 570, 320 S.E.2d 690, 693 (1984)).

31. The Court concludes that issuing an order of civil contempt against Defendants would serve no useful purpose in this case. First, the damage to ATGI's business has been done and there is no practical means for Defendants to "purge" themselves of their repeated, flagrant, and unlawful conduct. To the contrary, the only potential means for Defendants to, in some sense, purge themselves of the conduct would be to require them to further communicate with Plaintiff's customers and vendors to retract or correct their prior false representations. The Court believes requiring such communications would only cause further confusion among ATGI's customers and vendors.

32. The Court further concludes that there is no prospect that the purpose of the Preliminary Injunction "can still be served by compliance with the order." N.C.G.S. § 5A-21(a)(2). It has now been over three months since the Preliminary Injunction issued. Accordingly, to the extent Plaintiff requests an order holding that civil contempt be issued against Defendants, the Court concludes that the request should be DENIED.

**C. The Partial 12(b)(6) and 12(c) Motion, MTD Third-Party Complaint, and Motion for Pre-Filing Injunction**

33. In light of the Court's ruling on the Motion for Sanctions, the Court concludes that the Partial 12(b)(6) and 12(c) Motion, MTD Third-Party Complaint, and Motion for Pre-Filing Injunction are rendered moot. Therefore, the Partial 12(b)(6) and 12(c) Motion, MTD Third-Party Complaint, and Motion for Pre-Filing Injunction should be DENIED, without prejudice, as MOOT.

THEREFORE, IT IS ORDERED that:

1. The Motion for Sanctions (ECF No. 45) is GRANTED, in part, and DENIED, in part, as follows:

   a. ATGI's request for sanctions is GRANTED, and (a) Defendants' respective Answers to the Complaint (ECF Nos. 13, 14, and 15) are hereby stricken, (b) default judgment is hereby entered against Defendants in favor of ATGI as to the claims in the Complaint, and (c) Defendants' counterclaims against ATGI and cross claims against Third-Party Defendants are hereby DISMISSED, with prejudice.

   b. ATGI's request that Defendants be held in civil contempt is DENIED.

2. The Partial 12(b)(6) and 12(c) Motion (ECF No. 53), the MTD Third-Party Complaint (ECF No. 60), and the Motion for Pre-filing Injunction (ECF No. 94) are DENIED, without prejudice, as MOOT.

3. Plaintiff shall file a motion seeking an award of damages, and Plaintiff and Third-Party Defendants may file motions for any other relief, including attorneys' fees and costs, as may have been requested by the Motions and which were not addressed in this Order.

SO ORDERED, this the 2nd day of February, 2021.

/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge for
Complex Business Cases