JCG & Assocs., LLC v. Disaster Am. USA, LLC, 2022 NCBC 82.

STATE OF NORTH CAROLINA

BRUNSWICK COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 746

JCG & ASSOCIATES, LLC; MIP 1, LLC; JAMES BONICA; PATRICIA BONICA; and DAVID L. PETERSON, Trustee of the David L. Peterson Living Trust,

    Plaintiffs and Counterclaim Defendants,

v.

DISASTER AMERICA USA, LLC; DA ROOFING SYSTEMS; ESTATE OF DONALD LEE HUSK, by and through KATHLEEN KAREN HUSK as executrix,

    Defendants and Third-Party Plaintiffs,

and

DISASTER AMERICA OF NORTH CAROLINA, LLC,

    Defendant, Counterclaim Plaintiff, and Third-Party Plaintiff,

v.

TERRY WILLIAMS; and AIRWARE TRANSPORTATION AND LOGISTICS, LLC,

    Third-Party Defendants.

**ORDER AND OPINION FOLLOWING SHOW-CAUSE HEARING**

1. Defendants Disaster America USA, LLC, Disaster America of North Carolina, LLC, DA Roofing Systems (collectively, "Disaster America"), and the Estate of Donald Lee Husk have repeatedly failed to comply with the Business Court Rules ("BCR"), the pretrial scheduling order, and other orders in this case. The Court ordered them to show cause why they should not be sanctioned for their

noncompliance and scheduled a hearing for Defendants to appear on 9 December 2022. Defendants did not submit a brief and supporting materials in response to the show-cause order despite a warning that the Court would view their failure to do so "as a decision not to contest an award of sanctions." (Order Show Cause ¶ 6, ECF No. 150.) Nor did Defendants appear at the show-cause hearing.

2. Having considered all relevant matters of record, the Court concludes, in the exercise of its discretion, that justice requires the entry of sanctions against Defendants for their misconduct. For the reasons discussed below, the Court will strike Defendants' answers to the complaint and amendment to the complaint; enter default judgment; and dismiss any remaining third-party claims and defenses.

> *Reiss & Nutt, PLLC, by W. Cory Reiss and Kyle J. Nutt, for Plaintiffs JCG & Associates, LLC, MIP 1, LLC, James Bonica, Patricia Bonica, and David L. Peterson, Trustee of the David L. Peterson Living Trust.*
>
> *No counsel appeared for Defendants Disaster America USA, LLC, Disaster America of North Carolina, LLC, DA Roofing Systems, and the Estate of Donald Lee Husk.*
>
> *No counsel appeared for Third-Party Defendants Terry Williams and Airware Transportation and Logistics, LLC.*

Conrad, Judge.

## I.
## FINDINGS OF FACT

3. These findings are tailored to the relevant procedural history leading up to and following the Court's show-cause order. Prior orders describe in detail the allegations of the complaint, as amended, and the nature of the asserted claims. *See generally JCG & Assocs., LLC v. Disaster Am. USA, LLC*, 2022 NCBC LEXIS 94 (N.C. Super. Ct. Aug. 12, 2022); *JCG & Assocs., LLC v. Disaster Am. USA, LLC*, 2021 NCBC

LEXIS 109 (N.C. Super. Ct. Dec. 9, 2021); *JCG & Assocs., LLC v. Disaster Am. USA, LLC*, 2019 NCBC LEXIS 112 (N.C. Super. Ct. Dec. 19, 2019).

4.      Plaintiffs JCG & Associates, LLC, MIP 1, LLC, and James and Patricia Bonica initiated this action in April 2019, asserting numerous claims against Disaster America, its CEO Donald Husk, and its COO Jason Husk. (*See* Compl., ECF No. 2.) In addition to its answer, Disaster America asserted affirmative defenses as well as counterclaims against MIP 1 and the Bonicas. (*See* Mot. Strike & Dismiss, Affirmative Defenses, Answer, and Countercls., ECF No. 3.) Donald Husk separately moved to dismiss the claims against him for lack of personal jurisdiction. (*See* Mot. Dismiss, ECF No. 4.) After the Court denied Donald Husk's motion to dismiss, *see JCG*, 2019 NCBC LEXIS 112, at *11, he filed his answer to the complaint in January 2020, (*see* Def. Donald Husk's Answer Pls.' Compl., ECF No. 41). Jason Husk never responded to the original complaint.

5.      In February 2020, the Court granted leave to add David L. Peterson, trustee of the David L. Peterson Living Trust, as a plaintiff. (*See* Order Mot. Amend, ECF No. 68; Amendment Compl., ECF No. 70.) Disaster America, Donald Husk, and Jason Husk timely filed their answer to Peterson's claims. They also asserted affirmative defenses, counterclaims against Peterson, and third-party claims against Terry Williams and Airware Transportation and Logistics, LLC.[1] (*See* Defs.' Answer Amended Compl., Countercl., and Third-Party Compl., ECF No. 71.)

---

[1] Williams and Airware have never participated in this action, nor has any counsel ever made an appearance on their behalf. Although the third-party complaint contains a certificate of

6. In early 2021, counsel for Disaster America, Donald Husk, and Jason Husk moved to withdraw. (*See* Mot. Withdraw, ECF No. 103.) The Court granted the motion, stayed all deadlines for a month, and directed Disaster America, Donald Husk, and Jason Husk to promptly retain new counsel. (*See* Order Mot. Withdraw ¶ 8, ECF No. 109.) The Court also reminded Disaster America that " 'a corporation must be represented by a duly admitted and licensed attorney-at-law' and cannot represent itself." (Order Mot. Withdraw ¶ 7 (quoting *LexisNexis, Div. of Reed Elsevier, Inc. v. TRaviSHan Corp.*, 155 N.C. App. 205, 209 (2002)).)

7. When the stay expired without an entry of appearance by new counsel, the Court sent an e-mail, copying all counsel and unrepresented parties, that directed Donald Husk and Jason Husk to individually create *pro se* user accounts for the e-filing system. In response, Jason Husk reported that Donald Husk had died a few weeks earlier.

8. The Court convened a status conference on 30 March 2021. Counsel for Plaintiffs appeared. Jason Husk also appeared on his own behalf. But no counsel appeared for Disaster America or the late Donald Husk. At the conference, Plaintiffs' counsel and Jason Husk agreed to extend the discovery period by thirty days, and Plaintiffs disclosed their intent to move to substitute Donald Husk's estate as a party. The Court then directed the parties to file a status report regarding the state of the probate proceedings, the anticipated timeframe for a motion to substitute, whether

---

service on Williams and Airware, there is no evidence that either party was properly served with this pleading.

any Defendant had retained or intended to retain counsel, and whether any party wished to extend the discovery period again. The Court also ordered Jason Husk to associate himself with the e-filing system as a *pro se* litigant and sent him a copy of the relevant order via e-mail. (*See* Order Amending Case Management Deadlines ¶¶ 3, 5, 6, ECF No. 111.)

9. Plaintiffs' counsel submitted a status report on 13 May 2021 via e-mail to the Court's law clerk and copying Jason Husk. No Defendant joined in that report or submitted a separate report. Two weeks later, Plaintiffs' counsel informed the Court via e-mail, again copying Jason Husk, that Kathleen Husk had been appointed as executrix of Donald Husk's estate.

10. Plaintiffs then filed a motion to substitute the estate of Donald Husk, by and through Kathleen Husk as executrix, as a party in place of Donald Husk. (*See* Mot. Substitute Party 2, ECF No. 112.) Although Plaintiffs asked Jason Husk and Kathleen Husk for their positions, as required by BCR 7.3, neither responded. In an interim order, the Court shortened the time to respond to the motion to substitute and directed Plaintiffs' counsel to serve a copy of the order on Disaster America, Jason Husk, and Kathleen Husk and to file a certificate of service. The interim order reiterated that the Court had instructed Jason Husk orally, via e-mail, and via court order to associate himself as a *pro se* litigant and that his failure to comply was a violation of court orders and the BCRs. The Court stated that, going forward, it would presume that Jason Husk had received "actual or constructive notice of all documents

filed and served through the electronic-filing system." (Interim Order Mot. Substitute ¶¶ 2–5, ECF No. 113.)

11. Plaintiffs filed the certificate of service on 8 June 2021. (*See* Certificate Serv. Interim Order, ECF No. 114.) No Defendant filed a response. On 29 June 2021, the Court granted the motion to substitute, directing Plaintiffs' counsel to serve a copy of the order on Kathleen Husk and to file a certificate of service, (Order Mot. Substitute Party ¶¶ 4, 5, ECF No. 117), which Plaintiffs timely filed on 8 July 2021, (Certificate Serv. Order, ECF No. 118). The Court further directed Kathleen Husk, if she chose not to retain counsel, to create a user account as a *pro se* litigant and to associate herself to the case in the e-filing system. The order gave any party ten days to move to modify any case management deadlines. (*See* Order Mot. Substitute Party ¶ 5.)

12. On 19 August 2021, having heard nothing from Defendants, the Court entered a scheduling order and notice of status conference. The Court observed that (i) Disaster America had not retained counsel and could not proceed *pro se*; (ii) discovery had closed because no party had moved to extend the discovery deadlines; (iii) Jason Husk had not complied with the order to associate himself to the case; and (iv) Kathleen Husk had not created a user account, filed a notice of association, or moved for relief from using the e-filing system. The Court ordered Kathleen Husk to create a user account and associate herself as a *pro se* litigant and indicated that the Court would presume that she had received "actual or constructive notice of all [subsequent] documents filed and served through the electronic-filing system." The Court also ordered each side to file a status report regarding their

availability for a hearing on a pending motion for summary judgment and directed Jason Husk and Kathleen Husk to indicate whether they intended to retain counsel. Once again, Plaintiffs were directed to file a certificate of service. (*See* Scheduling Order and Notice Status Conf. ¶¶ 3–8, ECF No. 123.)

13. In compliance with the scheduling order, Plaintiffs filed both a certificate of service, (Certificate Serv. Orders, ECF No. 124), and a status report, (Status Report Pls., ECF No. 125). Nothing was filed by Defendants.

14. At the 20 September 2021 status conference, counsel for Plaintiffs appeared, and Jason Husk appeared on his own behalf. Kathleen Husk did not appear. No counsel appeared for Disaster America. The Court reiterated to those present the importance of being associated with the case through the e-filing system and the risk of missing court filings and notices.

15. On 4 November 2021, the Court noticed a jury trial to begin on 29 August 2022. (*See* Notice Jury Trial, ECF No. 129.) The Court entered a pretrial scheduling order, reiterating that a limited liability company must be represented by counsel. The Court also noted that many required pretrial submissions were "designed to be prepared jointly by all the parties," but "[i]f any party fail[ed] to cooperate . . . , the other parties shall nonetheless prepare and file their own submissions . . . ." The Court further advised that "failure to participate in the pretrial process or otherwise comply with th[e] [o]rder may result in sanctions, including monetary sanctions and,

if appropriate, dismissal of claims and defenses." (Pretrial Scheduling Order ¶¶ 15, 16, ECF No. 130.)[2]

16. In January 2022, Jason Husk filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code but did not report it to the Court. When the Court learned of the bankruptcy proceeding, it entered a stay of all claims against Jason Husk. The Court also directed the parties to file a status report regarding what effect, if any, the stay should have on the other pending claims, (*see* Order Regarding Automatic Stay Claims Against Def. Jason Husk ¶¶ 2, 3, ECF No. 135), but no party submitted a filing. "[G]iven the lack of communication from all parties," the Court stayed all proceedings, vacated the pretrial scheduling order, and canceled the jury trial. (Order Staying All Proceedings ¶ 2, ECF No. 136; Notice Cancellation, ECF No. 137.) Plaintiffs then reported that Jason Husk had been discharged from bankruptcy on 15 February 2022. (*See* Status Report Bankruptcy Jason Husk ¶ 1, ECF No. 138.)

17. In July 2022, the Court lifted the stay and dismissed all claims against Jason Husk following his bankruptcy. The Court also issued a new pretrial scheduling order for the remaining claims and parties. This order again stated that LLCs may

---

[2] Plaintiffs filed two timely summary judgment motions in this action. (*See* Mot. Partial Summ. J., ECF No. 98; Mot. Partial Summ. J., ECF No. 131.) The Court granted the first motion in part, entering judgment in favor of Plaintiffs on their claims for declaratory judgment and on Disaster America NC's counterclaims for breach of contract and quantum meruit. The counterclaims were dismissed with prejudice. *See JCG*, 2021 NCBC LEXIS 109, at *13. The second motion was denied; in its opinion, the Court reiterated that Defendants had not been represented by counsel nor meaningfully participated in the litigation since the withdrawal of counsel in 2021 and that limited liability companies must be represented by counsel in litigation. *See JCG*, 2022 NCBC LEXIS 94, at *2–3, n.2.

not proceed *pro se* and warned that "failure to participate in the pretrial process or otherwise comply with th[e] [o]rder may result in sanctions, including monetary sanctions and, if appropriate, striking of pleadings, dismissal of claims, and dismissal of defenses." (Order Mot. Lift Stay ¶ 4, ECF No. 141; Pretrial Scheduling Order ¶¶ 14, 15, ECF No. 142.)

18.    On 27 September 2022, Plaintiffs reported that Defendants had "not respond[ed] to any correspondence sent by the Plaintiffs, [had] not compl[ied] with any of the deadlines established by the Court's [pretrial scheduling order], and ha[d] made no effort to participate in the [p]re-[t]rial process." (Status Report Pretrial Procs. 2, ECF No. 144.) In light of Plaintiffs' representations, the Court ordered Defendants to file a response to Plaintiffs' report along with supporting materials no later than 5 October 2022. (*See* Order Calling for Resp., ECF No. 148.)

19.    Nothing was filed. As a result, on 9 October 2022, the Court ordered Defendants to show cause why they should not be sanctioned for their repeated noncompliance with its orders. The Court warned Defendants that it was "considering severe sanctions, including but not limited to striking Defendants' answer to the amended complaint; entering default judgment; dismissing any remaining counterclaims, third-party claims, and defenses; and awarding reasonable costs and fees, including attorneys' fees, that Plaintiffs incurred because of Defendants' failure to comply with the pretrial scheduling order." The Court ordered Defendants to submit a brief and supporting materials by 1 November 2022, noting that further noncompliance would be viewed as "a decision not to contest an award of

sanctions." (Order Show Cause ¶¶ 1, 3.) After Defendants missed this deadline, the Court issued a notice of hearing. (*See* Notice Hearing, ECF No. 155; Amended Notice Hearing, ECF No. 157.)

20. The Court held a show-cause hearing on 9 December 2022. Plaintiffs' counsel appeared on behalf of their clients. Defendants did not appear, either in person or through counsel.

## II.
## CONCLUSIONS OF LAW

21. Trial courts have inherent authority "to do all things that are reasonably necessary for the proper administration of justice," *Beard v. N.C. State Bar*, 320 N.C. 126, 129 (1987), including "the power . . . to sanction parties for failure to comply with court orders," *Daniels v. Montgomery Mut. Ins. Co.*, 320 N.C. 669, 674 (1987). The "power to sanction disobedient parties, even to the point of dismissing their actions or striking their defenses, . . . is longstanding and inherent," *Minor v. Minor*, 62 N.C. App. 750, 752 (1983), and the Court may address such misconduct on its own motion or upon motion of a party, *see Grubbs v. Grubbs*, 2017 N.C. App. LEXIS 146, at *38 (N.C. Ct. App. Mar. 7, 2017) (unpublished). The imposition of sanctions is within the sound discretion of the trial judge and is reviewed for abuse of discretion. *See Red Valve, Inc. v. Titan Valve, Inc.*, 2019 NCBC LEXIS 57, at *41 (N.C. Super. Ct. Sept. 3, 2019).

22. Severe sanctions—such as striking a party's answer and entering default judgment—"are appropriate when a party . . . abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the

integrity of the process." *Id.* at *43 (quoting *Projects Mgmt. Co. v. DynCorp Int'l LLC*, 734 F.3d 366, 373 (4th Cir. 2013)). A trial court may impose severe sanctions only after considering less severe sanctions. *See id.* at *61–62; *Few v. Hammack Enters., Inc.*, 132 N.C. App. 291, 299 (1999). It is necessary to "weigh the circumstances of each case and choose a sanction that, in the court's judgment, 'properly takes into account the severity of the party's disobedience.'" *Out of the Box Devs., LLC v. LogicBit Corp.*, 2014 NCBC LEXIS 7, at *10 (N.C. Super. Ct. Mar. 20, 2014) (quoting *Patterson v. Sweatt*, 146 N.C. App. 351, 357 (2001)).

23. Dismissal of a third-party claim is allowed under Rule 41(b) for "failure to prosecute the claim, failure to comply with the rules of civil procedure, or failure to comply with a court order."[3] *Krawiec*, 2018 NCBC LEXIS 86, at *7 (quoting *McKoy v. McKoy*, 214 N.C. App. 551, 552–53 (2011)); *see* N.C. R. Civ. P. 41(c) ("The provisions of [Rule 41(b)] apply to the dismissal of any . . . third-party claim."). The trial court must consider lesser sanctions before dismissing a claim and must consider "(1) whether the [third-party] plaintiff acted in a manner which deliberately or unreasonably delayed the matter; (2) the amount of prejudice, if any, to the

---

[3] Although the language of Rule 41(b) appears to contemplate that the relief provided under this Rule is triggered only upon motion of a party, *see* N.C. R. Civ. P. 41(b) ("For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim therein against him."), it is clear that the Court may also dismiss an action or individual claims pursuant to Rule 41(b) on its own motion. *See, e.g.*, *Hebenstreit v. Hebenstreit*, 240 N.C. App. 27, 31 (2015) (dismissing motion for contempt *sua sponte* pursuant to Rule 41(b) for plaintiff's failure to prosecute); *Rabinowitz v. Suvillaga*, 2019 NCBC LEXIS 8, at *13–14 (N.C. Super. Ct. Jan. 28, 2019) (dismissing counterclaims *sua sponte* pursuant to Rule 41(b) for failure to comply with court orders); *Krawiec v. Bogosavac*, 2018 NCBC LEXIS 86, at *5, 7–9 (N.C. Super. Ct. Aug. 16, 2018) (dismissing action *sua sponte* pursuant to Rule 41(b) for plaintiffs' failure to prosecute after show-cause hearing).

[third-party] defendant; and (3) the reason, if one exists, that sanctions short of dismissal would not suffice." *Brunner v. Lodge on Lake Lure, LLC*, 2016 NCBC LEXIS 86, at *4 (N.C. Super. Ct. Nov. 3, 2016) (quoting *Wilder v. Wilder*, 146 N.C. App. 574, 578 (2001)).

24.    Plaintiffs contend that ultimate sanctions are appropriate. They ask the Court to strike Defendants' answers to the complaint and the amendment to the complaint and to enter default judgment against Defendants on all claims. (*See* Pls.' Mem. Supp. Sanctions 6–7, ECF No. 156.)

25.    The Court agrees. Since the withdrawal of their counsel in February 2021, Defendants have repeatedly disregarded the Business Court Rules, willfully disobeyed court orders, and completely failed to participate in this litigation. This misconduct has caused prejudice to Plaintiffs, impeded the progress of the case, and wasted judicial resources.

26.    Indeed, Defendants have not taken even the most basic steps necessary to participate in this case. The Court has cautioned Disaster America over and over that "a corporation must be represented by a duly admitted and licensed attorney-at-law and cannot procced *pro se*." *LexisNexis*, 155 N.C. App. at 209. Even so, it has not retained counsel. Likewise, the Court has informed Kathleen Husk that the Business Court Rules require all parties, unless excused for good cause, to use the e-filing system, *see* BCR 3, and has twice ordered her to retain counsel or create

an e-filing user account and associate herself to this case as a *pro se* litigant. She has yet to do either.[4]

27. Nor have Defendants complied with any of their pretrial obligations. The pretrial scheduling order required them to serve exhibits and witness designations, participate in a conference with opposing counsel, jointly prepare a proposed pretrial order, and jointly prepare tentative jury instructions. They have done none of these things despite a warning that failure to participate would likely result in sanctions. Such complete noncompliance is evidence of willfulness. And the persistent refusal to respond to Plaintiffs' communications, participate in joint filings, and file timely responses in this matter undermines both the spirit and the letter of the Business Court Rules. *See* BCR 1, 7, 12.

28. Moreover, Defendants have refused every invitation to explain their conduct. The Court directed Defendants to respond to Plaintiffs' representations that they had not fulfilled their pretrial obligations. They did not. Given the lack of response, the Court issued the show-cause order, directed Defendants to file a brief and supporting materials, and made clear that failure to comply would be deemed "a decision not to contest an award of sanctions." (Order Show Cause ¶ 6.) Defendants did not file a brief, submit supporting materials, or appear at the show-cause hearing. Accordingly, the Court concludes that they have made deliberate decisions not to comply with the show-cause order and not to contest an award of sanctions.

---

[4] Although Jason Husk is no longer a party to this case, the Court notes that it also directed him no fewer than five times to undertake similar actions to no avail.

29. By the Court's count, some or all Defendants have failed to comply with at least seven orders spanning some eighteen months. (*See* ECF Nos. 111, 117, 123, 135, 142, 148, 150.) They have also failed to file briefs in response to at least three motions. And they have made no attempt at all to communicate with Plaintiffs or the Court.

30. The Court has the inherent authority to sanction litigants who refuse to comply with governing rules and orders. *See Few*, 132 N.C. App. at 298; *Lomax v. Shaw*, 101 N.C. App. 560, 563 (1991); *Out of the Box Devs., LLC*, 2014 NCBC LEXIS 7, at *9. In addition, the Court has inherent authority under Rule 41(b) to dismiss third-party claims for similar reasons. *See Krawiec*, 2018 NCBC LEXIS 86, at *7.

31. Here, in the exercise of its discretion, the Court concludes that sanctions are warranted. The Court has considered lesser sanctions but finds them unsuited to the conduct at issue. Defendants have willfully refused to comply with court orders, have disregarded the Business Court Rules, have ignored all overtures from their opponents and the Court, have not participated meaningfully in this case since early 2021, and show no signs that they will comply with their obligations in the future. Their conduct has unreasonably delayed this matter and prevented the final resolution of the claims at issue. And Defendants were given notice that their noncompliance with court orders and rules could result in severe sanctions, including the striking of pleadings, dismissal of claims, dismissal of defenses, and entry of default judgment. Lesser sanctions would neither alleviate the prejudice suffered by

Plaintiffs nor permit the orderly, just, and prompt resolution of this litigation. Only the most severe sanctions will do.

32. Accordingly, the Court will dismiss Defendants' third-party claims. Defendants have failed to participate in this litigation since February 2021. Williams and Airware, the third-party defendants, have never participated in this litigation. It is a waste of judicial resources to maintain an action when neither side is participating. This is especially so given that Defendants appear not to have served Williams and Airware properly and, in any event, have deliberately and unreasonably delayed final resolution of their third-party claims through their repeated failure to comply with the pretrial scheduling order—including the failure to identify any evidence or witnesses, prepare a proposed pretrial order, and prepare proposed jury instructions related to the third-party claims. Defendants' conduct "manifests an intention to thwart the progress of the action to its conclusion." *Krawiec*, 2018 NCBC LEXIS 86, at \*7 (quoting *In re Will of Kersey*, 176 N.C. App. 748, 751 (2006)). The Court therefore concludes that lesser sanctions will not suffice and that it is appropriate to dismiss Defendants' third-party claims with prejudice for failure to prosecute and for failure to comply with court orders.

33. In addition, the Court will strike Defendants' answers and affirmative defenses and enter default judgment in Plaintiffs' favor on most remaining claims.[5]

---

[5] *See, e.g.*, *Kearney Mach. & Supply Inc. v. Shenyang Mach. Tool Co.*, 2022 U.S. Dist. LEXIS 118494, at \*11 (N.D. Ala. July 6, 2022) (imposing default judgment as a sanction against a party who took "no steps to participate in this action in good faith"); *Garnier-Thiebaut, Inc. v. Castello 1935 Inc.*, 2019 U.S. Dist. LEXIS 210474, at \*23 (D. Md. Dec. 6, 2019) (imposing default judgment as a "sanction for Defendants' wholesale failure to participate in the

*See, e.g., Om Shankar Corp. v. Sai Devs., Inc.*, 2020 N.C. App. LEXIS 530, at \*8–15 (2020) (unpublished) (affirming entry of default judgment as sanction).

34.     A default judgment is appropriate only if the allegations of the complaint are adequate to state a claim. The Court has carefully reviewed the allegations here and concludes that they present sufficient bases to support the entry of a default judgment. *See Brown v. Cavit Scis., Inc.*, 230 N.C. App. 460, 467 (2013) (holding that, for purposes of default judgment, "if any portion of the complaint presents facts sufficient to constitute a cause of action, or if facts sufficient for that purpose fairly can be gathered from it, the pleading will stand" (cleaned up)).

35.     First, MIP 1, Peterson, and the Bonicas adequately state claims for fraud. As alleged, Disaster America and its representatives falsely stated that they possessed a North Carolina contractor's license allowing them to restore properties owned by MIP 1, Peterson, and the Bonicas. The allegations also show that this false statement was reasonably calculated to deceive, made with intent to deceive, did in fact deceive, and resulted in damages. *See Rowan Cnty. Bd. of Educ. v. U.S. Gypsum Co.*, 332 N.C. 1, 17 (1992) (listing the essential elements of fraud); (Compl. ¶¶ 71–93; Amendment Compl. ¶¶ 211–29). Because Plaintiffs have established fraud, their alternative claim for negligent misrepresentation is cumulative and may be dismissed as moot.

---

adversary process"); *Jindal Tubular USA, LLC v. Gilmore Pipe Sales, LLC*, 2019 U.S. Dist. LEXIS 246454, at \*8 (S.D. Miss. Apr. 4, 2019) (imposing default judgment as a sanction for failure to defend or prosecute case, appear at conferences, and respond to show-cause order).

36.     MIP 1, Peterson, and the Bonicas also state claims for constructive fraud. As alleged, these Plaintiffs had a special relationship of trust and confidence with Defendants who acted as their attorney-in-fact and agent regarding negotiations with insurance carriers.     Defendants breached their duties and sought to benefit themselves by inflating estimates and charging for work that was not performed. *See Sullivan v. Mebane Packaging Grp., Inc.*, 158 N.C. App. 19, 32 (2003) (stating that constructive fraud requires the plaintiff to show "(1) facts and circumstances creating a relation of trust and confidence; (2) which surrounded the consummation of the transaction in which the defendant is alleged to have taken advantage of the relationship; and (3) the defendant sought to benefit himself in the transaction"); (Compl. ¶¶ 94–102; Amendment Compl. ¶¶ 230–37).

37.     These three Plaintiffs also assert claims for unjust enrichment.  The Court previously declared that their contracts with Disaster America were invalid and not enforceable.     The allegations show that these Plaintiffs conferred funds on Defendants, that they were not conferred officiously, that the benefit was not gratuitous, that the benefit was measurable, and that Defendants consciously accepted the benefit. *See JPMorgan Chase Bank, N.A. v. Browning*, 230 N.C. App. 537, 541–42 (2013) (describing the five elements necessary to make out a *prima facie* case for unjust enrichment); (Compl. ¶¶ 103–07; Amendment Compl. ¶¶ 238–41).

38.     MIP 1 separately asserts a claim for unfair debt collection practices.  This claim, too, is well grounded.  As alleged, Defendants knew that their contract with MIP 1 was void, demanded payment, and refused to release MIP 1's personal property

until Disaster America was paid in full. *See Davis Lake Cmty. Ass'n, Inc. v. Feldmann*, 138 N.C. App. 292, 295–97 (2000) (concluding that allegations of unfair debt collection were adequate); (Compl. ¶¶ 108–12).

39. In addition, Plaintiffs adequately state claims for violations of N.C.G.S. § 75-1.1. The allegations show that Defendants deceived MIP 1, Peterson, and the Bonicas by falsely representing that they possessed JCG's North Carolina contractor's license. This deception could and did enable Defendants to obtain contracts with consumers, including Plaintiffs, and Defendants' breaches of those contracts injured Plaintiffs. *See Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 71–72 (2007) (stating that a plaintiff must allege "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiff" to make out a claim for unfair and deceptive trade practices); (Compl. ¶¶ 113–19, 136–39; Amendment Compl. ¶¶ 242–47).

40. Next, JCG states a claim for trade name and trademark infringement. It alleges that it has valid and protectable marks—its business name and general contractor's license number—which it has continuously and exclusively used in the State. It also alleges that Defendants' use of the mark is likely to cause confusion and has caused actual confusion among consumers, such as MIP 1, Peterson, and the Bonicas. *See Johnson & Morris, PLLC v. Abdelbaky & Boes, PLLC*, 2017 NCBC LEXIS 89, at *13–14 (N.C. Super. Ct. Sept. 28, 2017) (identifying elements of trademark infringement to include "valid and protectable mark" and likelihood that use of the mark will cause confusion); (Compl. ¶¶ 120–35). This infringement is also

an unfair and deceptive practice that is in or affecting commerce under section 75-1.1. *See Ray Lackey Enters., Inc. v. Vill. Inn Lakeside, Inc.*, 2016 NCBC LEXIS 9, at *37 (N.C. Super. Ct. Jan. 29, 2016) (treating trademark infringement as violation of section 75-1.1).

41. JCG, MIP 1, and the Bonicas assert claims under the North Carolina Racketeer Influenced and Corrupt Organizations Act. These claims are well grounded. Defendants impermissibly used JCG's general contractor's license to obtain contracts from MIP 1, the Bonicas, and others to perform restoration services in the wake of Hurricane Florence and used those contracts to make false claims by mail and electronic mail. Securing the contracts resulted in pecuniary gain for Defendants and caused damage to property owned by MIP 1 and the Bonicas and to JCG's business, each of whom was an innocent person. *See Gilmore v. Gilmore*, 229 N.C. App. 347, 356 (2013) (establishing a claim under the North Carolina RICO Act requires "(1) an innocent person must allege (2) an injury or damage to his business or property (3) by reason of two or more acts of organized unlawful activity or conduct, (4) one of which is something other than mail fraud, wire fraud, or fraud in the sale of securities, (5) that resulted in pecuniary gain to the defendants" (cleaned up)); (Compl. ¶¶ 140–55).

42. The same three Plaintiffs assert a claim for civil conspiracy. Because Plaintiffs have adequately pleaded their underlying claims for unfair and deceptive trade practices as well as violations of the North Carolina RICO Act, Plaintiffs have adequately stated a claim for civil conspiracy. *See Esposito v. Talbert & Bright, Inc.*,

181 N.C. App. 742, 747 (2007) ("It is well established that there is not a separate civil action for civil conspiracy in North Carolina." (citation and quotation marks omitted)); (Compl. ¶¶ 172–78).

43. MIP 1 and the Bonicas have also adequately stated claims for negligence. The complaint alleges that Defendants owed a duty of care in their performance of restoration work and that they breached that duty, resulting in damage to the properties. *See Keith v. Health-Pro Home Care Servs., Inc.*, 381 N.C. 442, 450 (2022) (stating that negligence requires "(1) a legal duty owed by the defendant to the plaintiff, (2) a breach of that legal duty, and (3) injury proximately caused by the breach"); (Compl. ¶¶ 179–90).

44. MIP 1, JCG, and the Bonicas also seek to impose liability on the estate of Donald Husk for the various claims above on both a theory of direct liability and on a theory of veil piercing. The complaint alleges that the late Donald Husk exercised complete domination and control over Disaster America's policy and business practices such that it was his mere instrumentality. In addition, the allegations state that the late Donald Husk used that domination and control to appropriate JCG's name and general contractor's license number to perpetrate a fraud on MIP 1 and the Bonicas. The Court therefore concludes that MIP 1, JCG, and the Bonicas have adequately pleaded a theory of liability based on veil piercing. *See Kerry Bodenhamer Farms, LLC v. Nature's Pearl Corp.*, 2017 NCBC LEXIS 27, at *12 (N.C. Super. Ct. Mar. 27, 2017) (describing the elements of a theory of liability premised on piercing the corporate veil); (Compl. ¶¶ 191–204).

45. Finally, the complaint and amendment to the complaint include a total of four requests for punitive damages that are labeled as claims for relief. There is no standalone claim for punitive damages. *See Collier v. Bryant*, 216 N.C. App. 419, 434 (2011) ("Punitive damages are available, not as an individual cause of action, but as incidental damages to a cause of action."). The Court will therefore address punitive damages, if necessary, in its consideration of remedies.

### III.
### CONCLUSION

46. For all these reasons, the Court, in the exercise of its discretion, enters sanctions against Defendants and **ORDERS** as follows:

a. Defendants' answers, including all affirmative defenses asserted therein, are **STRICKEN**.

b. Defendants' third-party claims are **DISMISSED** with prejudice.

c. Default judgment is **ENTERED** as to liability on all remaining claims for relief (other than the alternative claim for negligent misrepresentation) asserted against Defendants, and this matter shall proceed to a determination of Plaintiffs' damages.

d. The Court shall determine the amount of Plaintiffs' damages as well as any other remedies to be awarded by separate order after further submissions as follows:

(1) Plaintiffs shall have through and including 3 January 2023 to file (i) a brief detailing the compensatory and consequential damages they claim to have suffered and any supporting

materials, which may be in the form of affidavit testimony or evidence; (ii) any other materials needed to support Plaintiffs' requested remedies; and (iii) a proposed final default judgment.

(2)     Defendants shall have through and including 13 January 2023 to respond and object to Plaintiffs' submissions.  Failure to respond will be deemed a waiver of the right to object and a waiver of any right to a hearing.

(3)     No reply brief is permitted.

(4)     The Court will, if necessary, schedule a hearing on these matters at a later date.


        **SO ORDERED**, this the 12th day of December, 2022.


                                                    /s/ Adam M. Conrad
                                                    Adam M. Conrad
                                                    Special Superior Court Judge
                                                      for Complex Business Cases